IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:10-CR-31 |
| | ) | |
| DEON T. PATTEN, | ) | (PHILLIPS/SHIRLEY) |
| | ) | |
| Defendant. | ) | |

## ORDER OF DETENTION PENDING TRIAL

This case came before the Court on April 14, 2010, for a detention hearing pursuant to 18 U.S.C. 3142(f). Assistant United States Attorney Cynthia F. Davidson appeared on behalf of the Government. Attorney Paula R. Voss represented the Defendant, who was also present. The Defendant sought release on conditions including that he submit to electronic monitoring, that he live with Angela and Randy Dunlap, and that he resume work as a mason. The Government sought pretrial detention, arguing that no conditions of release existed that would reasonably assure the safety of the community or the Defendant's presence at trial.

The Defendant is charged [Doc. 1] with a single count of being a felon in possession of a firearm on November 28, 2009. At the detention hearing, the Government presented the testimony of Special ATF Agent Rebecca Bobich, who testified based upon her review of police reports and a video recording. Agent Bobich testified that on November 28, 2009, the Knoxville Police Department (KPD) dispatched officers to an armed burglary in progress. Three calls to 911 reported that Deon Patten was attempting to break into the caller's home through a side window. Upon their arrival at the residence, the officers encountered the Defendant in his car pulling away

1

from the residence. At the officers' direction, the Defendant stopped. An examination of the residence, revealed that the light bulb had been removed from the light over the front porch and tossed into the yard, that the screen was off a window, and that the window showed signs of an attempt to pry it open. Agent Bobich testified that a canine was lead around the Defendant's car and "hit" on it. The Defendant informed the officers that a gun was in the car. The officers located the gun, which Agent Bobich testified affected interstate commerce.

Agent Bobich also testified regarding a police report filed on November 23, 2009, which stated that the Defendant had gone to that same residence to collect his belongings. While there, he is alleged to have told some children that he had a gun. Officers responded to the residence but did not find a gun. The officers asked the Defendant to leave. Agent Bobich testified that the Defendant had six prior felony convictions consisting of statutory rape, escape, and four drug convictions.

On cross-examination, Agent Bobich agreed that she was not present at the scene of either of the November 2009 incidents. With regard to the November 28, 2009 incident, Agent Bobich testified that the female 911 caller was a former girlfriend of the Defendant. Agent Bobich also agreed that this female was in the residence on November 28 with a man whom she claimed was her former boyfriend. The Defendant had been living at the residence three weeks earlier. Agent Bobich agreed that she did not know who removed the light bulb and the screen at the residence. The Defendant was cooperative and stopped his car. A cigarette wrapper with a white residue was found in the car but no quantity of drugs was discovered therein. The burglary charge arising from the November 28 incident was dismissed, but a state gun charge stemming from this incident remains pending. Agent Bobich stated that her investigation revealed that the Defendant had worked

for Odom Construction from April 2008 through April 2009. The Defendant had collected unemployment benefits since this time.

The Defendant presented the testimony of Angela Dunlap. Mrs. Dunlap testified that if the Defendant were released, he could live with her, her husband, and her twenty-one-year-old son in their Maryville home. She had known the Defendant, who had previously worked with her husband, for five years. She said the Defendant's daughter was her friend and the Defendant's granddaughter was her goddaughter. She stated that the Defendant had stayed at her house before and that she was comfortable with having him in her home. The Defendant had been laid off from Odom Construction. She testified that if the Defendant began working at Odom Construction again, her husband could provide transportation for the Defendant. Mrs. Dunlap testified that she was having a land telephone line installed in her home this week. She said that she would tell the Court if the Defendant did not follow the rules.

On cross-examination, Mrs. Dunlap testified that she worked as a sitter for an elderly lady and was not at home during the day. She stated that the Defendant's daughter had never mentioned that the Defendant had outbursts of temper.

Defense counsel proffered that the Defendant was currently laid off from Odom Construction but that Odom's masonry foreman had stated that the Defendant would be called back at the start of the next masonry job. The Defendant had worked at Odom from June 16, 2008, to July 2, 2009, and again from November 13, 2009 to November 30, 2009. During this second time span, the Defendant was performing masonry work at the Y-12 plant in Oak Ridge. In late November 2009, the Defendant was arrested on the state burglary and gun charges. At that time, his Y-12 identification badge was seized, and he could not return to the Y-12 masonry job.

The Government argued that the Defendant's six prior felonies demonstrate that he is a danger. It also argued that he is a flight risk due to the lengthy mandatory minimum sentence he faces, his prior failures to appear in court, and his escape conviction. It also noted the Defendant was previously arrested while on parole and that Mrs. Dunlap could not assure the Defendant's compliance with the conditions of his release during the day while she is at work. The Defendant argued that conditions exist that would insure the safety of the community and his presence in court. He asserted that he is a skilled laborer with the ability to work and has a job at Odom Construction. He can stay with the Dunlaps, who will also provide transportation to his job and who are arranging for a land telephone line to accommodate electronic monitoring. The Defendant asserted that he had chosen to remain in Knoxville where he had a job rather than return to his family in Morristown, Tennessee, the location of many of his older arrests. With regard to his future appearance in court, the Defendant contended that he had cooperated with police at the time of the November 2009 incident. He also pointed out that he had been on bond in Hamblen County since 2007 and had appeared numerous times on that charge.

Following a detention hearing, a defendant may be detained pending trial if no condition or combination of conditions exist that will reasonably assure (1) the defendant's appearance as required in court and (2) the safety of the community or any person in it. 18 U.S.C. § 3142(e). With regard to the community's safety, the government must establish the lack of such conditions by clear and convincing evidence, while the defendant's potential as a flight risk must only be shown by a preponderance of the evidence.

In light of the evidence presented and the Defendant's proffer, the Court finds by clear and convincing evidence that there are no conditions of release that could reasonably assure

the safety of the community or the Defendant's appearance in court. In making this determination, the Court has considered the factors enumerated in 18 U.S.C. § 3142(g). Factor one looks to the nature and circumstances of the offense charged, including whether it is a crime involving a firearm. See 18 U.S.C. § 3142(g)(1). Here, the charge against the Defendant involves a firearm. Accordingly, the Court finds that this factor weighs in favor of detention.

Second, the Court ordinarily finds that factor two, the weight of the evidence against the defendant, to weigh neither for or against release, given that the defendant is presumed innocent. See 18 U.S.C. § 3142(g)(2). In the present case, Agent Bobich provided testimony regarding the Defendant's possession of the gun. Thus, the Court finds that the weight of the evidence in this case also favors detention.

The third factor for the Court to consider examines the history and characteristics of the defendant, including "the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings." 18 U.S.C. § 3142(g)(3)(A). The Court has no information to allow it to consider the Defendant's family ties, length of residence in the community, community ties, or physical condition. The Defendant appears to have a promise of employment, but the Court does not know when that employment will start or why the Defendant has not worked for the past five months. Although the Defendant's lack of history of drug or alcohol abuse weighs in his favor, he appears to have limited or no financial resources. Additionally, his character and emotional condition weigh against him as the Court perceives him to have problems controlling his anger or emotions. The Defendant's past conduct and criminal history argues strongly for detention. The

Defendant has six prior felony convictions and sixty-one entries under criminal history on his Pretrial Services Report. He has been arrested three times since he last got out of prison. Finally, the Defendant's record of non-appearance also weighs in favor of detention. The Pretrial Services Report reflects that the Defendant has failed to appear on several occasions. Moreover, he has a felony escape conviction and other arrests for fleeing from officers and resisting arrest. Considering all of these factors together, the Court finds that they tip in favor of detention.

The Court must also consider whether, at the time of the current offenses, the defendant was on probation, parole, or pretrial release. See 18 U.S.C. § 3142(g)(3)(B). The Defendant was on bond in Hamblen County at the time of the instant offense. Accordingly, this factor also argues for detention.

Finally, with respect to the "nature and seriousness of the danger to any person or the community that would be posed by the person's release," the Court finds that this factor also weighs in favor of detention. See 18 U.S.C. § 3142(g)(4). The Court finds that the Defendant's past reveals that he has problems with outbursts of violence. The present charge arose out of an alleged armed robbery involving the Defendant attempting to break into his former girlfriend's residence while she was inside. The Defendant's criminal history involves arrests for assault and battery, numerous instances of resisting arrest, disorderly conduct, vandalism, and domestic violence. All of these share a common feature, the inability to control oneself.

With regard to the conditions proffered by the Defendant, the Court is impressed with Mrs. Dunlap and believes her to be well-intentioned. Nevertheless, she is not present in her residence during the day and would have no knowledge of the Defendant's conduct during that time. Moreover, none of the conditions offered by the Defendant can assure the Court that the Defendant

will not react with violence as has been his pattern over the past twenty to thirty years. The Court finds that the proposed conditions do not reasonably assure the Court of the safety of the community or even that the Defendant will appear as required.

The Court finds the Defendant to be a flight risk and the danger posed to the community from the Defendant's release to be great. Accordingly, the Court concludes that no condition or combination of conditions of release exist that could reasonably assure the safety of the community or the Defendant's presence in court. Therefore, the Defendant is **ORDERED** to remain in detention until his trial. The Defendant is committed to the custody of the Attorney General or his designated representative for confinement in a correction facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal. The Defendant shall be afforded a reasonable opportunity for private consultations with defense counsel. On order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility shall deliver the Defendant to the United States Marshal for the purpose of an appearance in connection with a court proceeding.

**IT IS SO ORDERED.**

ENTER:


    s/ C. Clifford Shirley, Jr.
United States Magistrate Judge